Albert Curry v. Commissioner. Grant Curry and Carolyn H. Curry v. Commissioner. Henry M. Curry, Jr. v. Commissioner. Franklin C. Irish v. Commissioner.
Curry v. Commissioner
Docket Nos. 10577, 10578, 10579, 10580
United States Tax Court
1947 Tax Ct. Memo LEXIS 245; 6 T.C.M. (CCH) 395; T.C.M. (RIA) 47096; April 17, 1947
*245 R. J. Cleary, Esq., Farmers Bank Bldg., Pittsburgh, Pa., for the petitioners. Stanley W. Herzfeld, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income and victory tax for 1943 as follows: Docket
No.
Petitioner
Deficiency
10577
Albert Curry
$1,724.09
10578
Grant and Carolyn H. Curry
1,009.60
10579
Henry M. Curry, Jr
2,035.47
10580
Franklin C. Irish
1,603.90 The only issue for decision in these cases is whether the petitioners are entitled to deduct from 1942 income certain amounts as worthless debts due from Seneca Corporation. Findings of Fact The petitioners filed their individual returns for 1942 and 1943 with the collector of internal revenue for the twenty-third district of Pennsylvania. The following table shows deductions claimed on the 1942 returns for worthless debts due from Seneca Corporation: Albert Curry
$22,084.57
Grant and Carolyn H. Curry
5,872.82
Henry W. Curry, Jr.
4,715.14
Franklin C. Irish
22,207.70 The Commissioner, in determining the deficiencies, disallowed these deductions.
Seneca Corporation was organized *246 in 1925 to carry on transactions in real estate. It had some transactions in Florida real estate. It was authorized to issue stock in the amount of $50,000. That amount of stock was issued on July 27, 1926. The several persons who were to become its stockholders advanced money to it before any stock was issued. Those amounts were far in excess of $50,000. Additional amounts were advanced by members of this group later as the corporation needed funds. A record of all such advances was kept in an account entitled "Unissued Stock". Offsetting entries in that account showed the stock issued in the total amount of $50,000 and small amounts returned to the stockholders from time to time. No definite understanding or agreement was ever had as to the amounts advanced by the stockholders in excess of the par value of their stock. Those excesses were, in the case of each stockholder, in proportion to the amount of stock held by him. There was no evidence of indebtedness given by the corporation to the stockholders. There was no agreement to pay interest and no interest was ever credited or paid on the advances. The stockholders expected to have a rapid and profitable turnover of the advances *247 and a repayment by the corporation as soon as it could make repayment. The corporation lost most of the money advanced to it. It disposed of most of its assets long before 1942. The only property which it owned during 1942 was a vacant lot in Dunedin, Florida, which it had purchased for $15,000 in December 1925. The record does not show that that property was worth the taxes due on it at the beginning of 1942. It was sold during 1942 and the corporation received $92.60. The corporation was then dissolved. Its assets were not sufficient to pay the expenses of dissolution, including a proper fee for the person who handled the dissolution. The petitioners had advanced money to the corporation in excess of the par value of their stock. A part of those advances was never returned to them by the corporation. Their rights to have those advances return did not become worthless during 1942. Opinion MURDOCK, Judge: Counsel for the petitioners has failed to file a brief although more than four and one-half months have elapsed since these cases were heard. He stated certain amounts at the hearing which he said were the correct amounts claimed as debts due from Seneca Corporation which *248 became worthless in their entirety in 1942. Those amounts, those claimed on the returns, and those claimed in the petition are all different. We have been unable to find from the evidence exactly how much the amounts should be in each case. However, that makes no difference because whatever the amounts were, the petitioners have failed to establish by the evidence that their rights incident thereto became worthless during 1942. Those rights were not evidenced by any of the usual evidences of debts, such as notes or even accounts payable. They were unsecured. They bore no interest. There was no fixed date for repayment. There was no definite understanding among the parties in regard to them except that they were to be returned when the corporation had funds available. The corporation lost almost all of its properties long prior to 1942. It still retained legal title to one, a vacant lot in a Florida town. One of the petitioners stated that a group of men had come into that town during the Florida real estate boom and had spent a lot of money there, which caused him to hope for awhile that they would again became active after they left in 1926, but they never did. This apparently was *249 the only asset giving rise to hope in the mind of anyone after the boom collapsed. The evidence does not show that this property had any net value over and above the taxes due on it at the beginning of 1942 or that there was then the slightest probability that the corporation would have any money to make even a small repayment on any of the advances. The evidence does not justify a finding that any debt became worthless or that any valuable rights ceased to exist during 1942 and, consequently, the petitioners must lose. Decisions will be entered under Rule 50.